

The Honorable Mary Pat Thynge
U.S. District Court
844 N. King Street
Lock box #18
Wilmington, DE 19801

— 0 6 - 2 6 3 —

(Delivered by hand)
November 13, 2007

RE: Sminkey v State of Delaware et al.
    STATUS REPORT C.A. 263***

Dear Judge Thynge;

Please allow this to serve as plaintiff's STATUS REPORT.

I personally delivered this report to the court today due to the holiday
yesterday. It is NOT necessary you read the voluminous amount of
documents in the black binder. It is provided if you care to scan them (as
they shed some light on the consistent behaviors of the defendant, State of
Delaware).

Unfortunately, I must advise the court things are NOT preceding well.

## STATEMENT OF FACTS

Plaintiff is a 45 year old white male who is a retired police officer who
possesses a doctorate degree in criminal justice.

Plaintiff was employed as a probation and parole officer cadet from
February 25, 2005 – April 28, 2005. Plaintiff was due to graduate with his
class the following morning.

Plaintiff's formal termination came from then commissioner defendant
Stanley Taylor on the recommendation of defendant Kathleen Mickle-Askin.
All other defendants contributed to plaintiff's demise except defendant Ruth
Ann Minner, who is the highest ranking policy maker in state government.

On November 24, 2005 plaintiff signed a charge of discrimination. On or
about January 30, 2006 plaintiff received a right to sue letter. On or about
April 24, 2006 plaintiff filed this complaint, which is 237 paragraphs long.

On October 3, 2006 The Honorable Kent Jordan ordered plaintiff to show cause. On January 12, 2007 your Honor ordered plaintiff to re-serve all defendants, except Sauls, within 30 days, which plaintiff did.

In early February 2007, all defendants answered the complaint except defendants Layton, Franze, and Watson.

On or about February 20, 2007 plaintiff filed a motion for default judgment against defendants Layton, Franze, and Watson. The court DID NOT grant default judgment and all defendants answered the complaint by and through their attorney, Mr. Marc Niedzielski.

In March 2007 plaintiff and defendants exchanged Rule 26(a) disclosures. On or about March 23rd the court accepted our joint scheduling proposal.

Around this same time, Mr. Niedzielski and plaintiff agreed not to charge each other for copies of documents.

On or about March 28th Mr. Niedzielski served plaintiff with his first, and only set of interrogatories and request for production of documents.

Around the middle of April we agreed to streamline discovery and go back seven years in time from April 16, 2007. We further agreed to accept each others copies of documents as "originals". We also agreed to attempt to do things "on the cheap" throughout this litigation.

On or about April 28th, plaintiff answered defendants first set of interrogatories and request for production of documents and sent his first set of interrogatories and request for production of documents to defendants.

On or about May 31st defendants answered plaintiff's first set of interrogatories and request for production of documents.

On June 18th plaintiff sent Mr. Niedzielski a letter clarifying discovery and sought compliance with discovery.

On July 18th plaintiff sent Mr. Niedzielski another letter requesting compliance with discovery. SEE EXHIBIT #1

questions he has asked are relevant and likely to lead to discoverable information. Last point, at the same time Mr. Niedzielski is asserting "page limitations" and "judicial economy"; he is seeking thousands of discovery documents, including documents from plaintiff's dermatologist, urologist, and massage therapist (who cannot diagnose). Plaintiff would love to hear what could possibly lead to relevant information regarding his skin or male functions. Mr. Niedzielski absolutely knows the disabilities asserted are as a result of two auto accidents and pain medications. Plaintiff considers this a flagrant abuse of discovery.

Given the length of the complaint, the number of defendants, and number of legal issues, plaintiff believes we could hit 10,000 documents even while being prudent and conservative. Mr. Niedzielski clearly knows plaintiff has the burden of proof and he has all of the documents plaintiff needs to prove his case. Hence, this situation is a no-brainer, (even for a guy who couldn't pass the probation and parole training academy).

## PROPOSED REMEDY

With the aforementioned said, plaintiff would like to see the court order Mr. Niedzielski and his clients fully comply with all previous requests, as well as, plaintiff's third request for production of documents and interrogatories.

Plaintiff would like to see discovery deadlines extended for six months due to Mr. Niedzielski's failure to cooperate with plaintiff's discovery efforts.

Plaintiff would like to see the court take appropriate action against Mr. Niedzielski if the court feels his actions were inappropriate.

Plaintiff would like to have a reasonable expectation that Mr. Niedzielski would be timelier and appropriate in the future.

Thanks for your time and attention to this matter.

I am

Jack Sminkey, Ph.D.
3402 Edgmont Ave. #333
Brookhaven, PA 19015
610.620.3670

Cc. Mr. Marc Niedzielski, Esquire

Exhibit #1

Mr. Marc Niedzielski, Esquire
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801

June 18, 2007

RE:    06-263*** (Discovery Requests)

This letter comes to you regarding your response to my first set of production of documents and first set of interrogatories.

I must advise you that if you don't fully comply with discovery, I will have no alternative but to file a motion to compel and request sanctions as well.

The Rules

Rule 26(b) (1)
Information sought "need not be admissible at the trial if discovery appears reasonably calculated to lead to the discovery of admissible evidence".

Informal Discovery – Since I am not subject to lawyers' ethical duties, I may, in fact, choose to seek information from fellow cadets or any other person willing to cooperate.

Rule 33 (Interrogatories)
My first set of interrogatories were not form interrogatories. Interrogatory answers will help me determine what witnesses I want to depose and what documents I may wish to examine.

Additionally, none of my questions or requests were vague, ambiguous, unduly burdensome, or crafted to harass, annoy, or violate any privilege, as your general objections suggest.

My present claims are many. They include the following allegations:

(1)    Unconstitutional policies
(2)    Retaliation
(3)    Wrongful Discharge
(4)    Various Constitution Violations
(5)    Sexual Harassment
(6)    Various Forms of Discrimination
(7)    Conspiracy To Deprive Civil Rights
(8)    Unsafe Work Environment

(9)     Failure To adequately train, investigate, and supervise
(10)    Negligent Entrustment
(11)    Negligent Retention
(12)    Negligent Training
(13)    Covenant Of Good Faith And Fair Dealing
(14)    Breach Of Contract
(15)    Failure to allow me access to my personnel file

Suffice to say, this cause of action has a lot of defendants, a lot of allegations, and therefore, requires a lot of documents that are clearly discoverable, relevant, and/or admissible. The state possesses these documents. I am entitled to discover them.

## Doing It On The Cheap

As evidence by our email exchanges, we agreed to go back seven years in time. We agreed to this to streamline discovery, avoid unnecessary costs, etc. It now appears to me that you have become unwilling to fully comply with discovery and have raised broad, vague, or frivolous objections, which I will now address below.

## Defendants' Responses to Plaintiff's 1st Set of Interrogatories Directed To Defendants

## My Responses

Question #1 – All persons are party to this lawsuit. I believe, at minimum, I am entitled to information that provides identification of the person(s) involved, such as their full name, address, telephone number, last four digits of their social security number and date of birth.

We are in the discovery phase, and therefore, I need this information for investigative purposes.

Question #3 – I would be real surprised to learn that any of your clients don't possess a curriculum vitae. A CV speaks volumes about a person's background, education, experience, work history, etc. This is all very relevant to the assertions found in my (rather long) complaint.

Question #4 and #5 – You asked me for this information in Question #6 of your interrogatory to me. I provided you with an answer.

Additionally, I wonder if any of your clients have mental or medical problems, which could have contributed to the treatment I received as an employee. I also wonder if supervisors, managers, or other public officials have medical or psychological issues that would allow them to fail to correct an environment like the Department of Correction.

Here again, we are in the discovery phase. These very legitimate questions may lead to discoverable information and therefore, should be answered.

Question #6 – For investigative purposes a home address is important information to have to verify assets and identity, etc. None of your clients live at the Department of Justice or Training Academy. Also, some defendants have had personal judgments against them in the past. Should this occur again, their assets could come into question.

Question #7 – Defendants Franze and Shuler need to provide definite answers. Perhaps their union or some other repository has a copy of the paperwork, if applicable.

Question #8 & #9 – Defendants Minner, Taylor, Machtinger, and Shuler need to fully answer this question.

Question #10 – Defendants Minner, Mickle-Askin, Franze, and Shuler need to comply with this question.

I reject your general objections or the use of "N/A". The Defendant either has, or doesn't have a criminal record. I am entitled to this discovery request.

Question #11 – Given the length and numerous assertions in the complaint, I reject your broad objections to this and other questions. The central focus of this case has to do with education and training, or the lack thereof. Clearly, all defendants have, or can obtain the documentation requested.

Question #12, #13, #14 – I reject your general objections. All defendants need to provide documentation associated with these questions.

Question #19 – Defendant Sauls needs to provide an answer.

### Defendants Response To Plaintiff's First Request For Production Of Documents

#### Responses

Question #1 – I asked for a copy of said policies, not their website addresses. Please provide an authentic copy of all policies you failed to provide.

Question #2, #4, #5, #6, #7 – Same request as question #1.

Question #3 – I find it hard to believe that the Delaware Department of Justice would not possess a copy of these documents. Please look a little harder and provide me with an authentic copy.

Question #11 – I disagree. These documents are business records. I am not seeking their social security numbers or dates of birth, etc. Suppose I want to interview them regarding this cause of action?

Question #12 and #13 – Same response as question #11.

Question #15 and #16 – Still waiting for the documents.

Question #17 – These documents are business records (they were filled out anonymously in my class).

Question #18 – These documents are business and/or payroll records. Nothing private about a person's signature.

Question #25 – Awaiting copy of my MMPI test results and psychological evaluation results. Please provide same.

In closing I also noticed the interrogatories were not signed by the defendants. Please have them sign, and provide me with a signed copy, as well as future copies.

Regards,

Jack Sminkey, Ph.D
3402 Edgmont Ave. #333
Brookhaven, PA 19015
(610) 620-3670

Mr. Marc Niedzielski, Esquire
Deputy Attorney General                    July 18, 2007
820 N. French Street, 6th Floor
Wilmington, DE 19801                7006 0810 0002 7340 6525

RE:    Supplemental Response to Plaintiffs first request for production of
       documents (06-263***)

Dear Mr. Niedzielski:

On July 14th I received your supplemental response dated July 12, 2007 containing a
copy of the contents of my personnel file and psychological evaluation, etc.
(D000239-501).

On June 18th I sent you the enclosed letter and have had no response from your
office.

As a result of what seems to be an unwillingness to comply with discovery, I am
unable to provide you my second set of interrogatories and request for production of
documents. This problem is also putting a "glitch" in our discovery time line.

Please promptly comply with the contents of my June 18th letter (see enclosed) no
later than August 3rd so as to save me the trouble of filing the appropriate motions.

Lastly, I have provided you with a copy of my educational/training documentation.
This is the same documentation I am seeking from your clients, among other things.

Best regards,

Jack Sminkey, Ph.D
3402 Edgmont Ave. #333
Brookhaven, PA 19015-2804
610.620.3670

Via certified and regular mail

Mr. Marc Niedzielski, Esquire
Deputy Attorney General/DOJ
820 N. French Street, 6th Floor
Wilmington, DE 19801                          July 30, 2007

                Re: Sminkey v State of Delaware, et al. C.A. 06-263***

Dear Mr. Niedzielski;

I'm in receipt of your letter dated July 23, 2007. Obviously, I presumed my
June 18th letter to you was delivered. However, I accept you explanation.

My real concern is that I feel you have not been real cooperative or
forthright with discovery (as evidenced by your responses to my first set of
interrogatories and request for production of documents).

While I realize its summer time and you represent numerous defendants, I
also realize you are employed by the largest law firm in the State of
Delaware with unlimited resources. Additionally, you never requested an
extension for responding to discovery requests.

I appreciate your pointing out the local rule. In an effort at efficiency for
both of us, I am going to send you a second set of interrogatories and
requests that will supersede the first sets. In effect, it will give you a second
opportunity to fully and completely answer the questions and provide the
requested information.

Between now and then, I would suggest that you spend your time rounding
up documents instead of writing me a detailed letter. I believe, for the most
part, all of my questions and requests are very appropriate given the gravity
of the case.

I have signed the two authorization forms. It was my understanding that
when I provided you with a copy of my medical reports, applications for
employment, and certified prescription history, that negated the need for the
release forms.

The legal issues regarding health issues are: 1) was the employer aware of my disability 2) was the disability documented, and 3) did I request a reasonable accommodation? The answer is "yes" to all three. If you want to waste your time getting all of my medical files, go ahead, just send me a copy like we agreed.

It's also my understanding that we agreed to go back seven years in time regarding employment and medical data. I am unwilling to release a copy of my families tax returns do to privacy concerns. My wife and children are not party to this litigation.

I anticipate sending you the second set of rogs and requests shortly. Therefore, I would expect to have ALL information and documents back by the middle of September. I would also hope that all of your clients fully comply with my discovery requests.

Thanks for your prompt attention to this matter.

Sincerely,

*Jack Sminkey*

Jack Sminkey, Ph.D.
3402 Edgmont Ave. #333
Brookhaven, PA 19015
(610) 620-3670

(Enclosures)

Exhibit #2

LISTING OF DOCTORS (updated 04/16/2007)

1. Dr. Roger Farber, M.D.
   Pennsylvania Headache and Pain Center
   One Bala avenue, Suite 130
   Bala Cynwyd, PA 19004
   Ph. 610-664-9897 Fax 610-667- 8704
   ** Saw Dr. Farber after the 1999 accident and again after the October
   2002 accident (for a second opinion). Dr. Farber advises I fully
   recovered from the 1999 accident. The injuries from the 2002 accident
   are new.

2. Dr. William Nagle, M.D.
   Springfield Diagnostic Imaging Center
   891 Baltimore Pike
   Springfield, PA 19064
   Ph. 610-543-8860 Fax 610-543-6237
   ** Read MRI report from 1999 accident, no herniations noted.

3. Dr. Peter Spitzer, M.D.
   Bryn Mawr Medical Specialists
   933 Haverford Road
   Bryn Mawr, PA 19010
   Ph. 610-527-8118
   ** Primary Doctor for short period of time in 1999.

4. CVS Pharmacy
   3298 Edgmont Avenue
   Brookhaven, PA 19015
   Ph. 610-876-5100
   ** My pharmacy since the late 1990's.

5. Dr. Robert Crowell, D.O.
   Brookhaven Medical Center
   4000 Edgmont Avenue
   Brookhaven, PA 19015
   Ph. 610-876-3500 (Primary doctor since 2000)

6. Dr. Schatzberg and Dr. Ray Wisdo, (Chiropractors)
   Delaware County Pain Management

1308 MacDade Boulevard
Folsom, PA 19033-0407
Ph. 610-532-0657 Fax 610-532-4258
** I went to this pain management center after the October 2002
accident for various therapies (adjustments, massage, tens, etc).

7. Dr. Kamal Russell, M.D. (Department of Radiology)
Riddle Memorial Hospital
1098 West Baltimore Pike
Media, PA 19063
Ph. 610-891-3005 (Radiology) 610-891-0611(MRI)
** Doctor who read MRI report after October 2002 accident.

9. Dr. Norman Feinsmith, M.D. (Cardiology)
Pennsylvania Heath Institute, 2nd floor, suite C
39th & Market Streets
Philadelphia, PA 19104
Ph. 1-800-789-7366
** On October 25, 2003, shortly after taking vioxx prescription, I had
symptoms of having a heart attack. My wife drove me to a hospital
where I was examined and released a few hours later. I was told to
follow up with a cardiologist, which I did. Dr. Feinsmith advised me I
was ok but suggested I stop taking phentenermine (for weight
control). I took his advice. At the time, there were no published
reports about the problems with vioxx.

10.Dr. William Murphy, M.D.
Smart Rehabilitation
60 State Road. Suite C
Media, PA 19063
Ph. 610-892-7344 Fax 610-892-7302
** Dr. Schatzberg referred me to Dr. Murphy for further neurological
testing.

11.Dr. Richard Buonocore, M.D.
Neurosurgical Practice Associates
Crozer Chester Medical Center, Suite #428
Chester, PA 19013
Ph. 610-874-4044

\*\* Dr. Crowell referred me to Dr. Buonocore for a second opinion regarding my neurological well being.

12. Dr. Kenneth DeGroot, Chiropractor
    DeGroot Chiropractic Health Center
    1401 Silverside Road, Suite#1
    Silverside Professional Park
    Wilmington, DE 19810
    \*\* I went to this health center after about six months without therapy when my condition worsened. Attended from June 2004 to early 2005. Had massage, tens, adjustments, etc.

13. Dr. Ronald Rosenfeld, M.D.
    Orthopedic Surgery & Sports Medicine
    2000 Sproul Road
    Broomall, PA 19008
    Ph. 610-356-3700 Fax 610-356-2390
    \*\* Referred to Dr. Rosenfeld by Dr. Crowell because condition worsened. Dr. Rosenfeld advises I have pretty much run the gamete and surgery is not an option. I am just stuck with the injuries, condition, and pain that resulted from the October 2002 accident.

14. Dr. Robert Slater, M.D. (Neurologist)
    2100 Keystone Road, suite #401
    Drexel Hill, PA 19026
    Ph. 610-259-9500
    \*\*Dr. Crowell referred me to Dr. Slater to address my ongoing memory loss problem. Dr. Slater believes my memory loss was the result of my taking Ultraset and/or stress. He switched my medicine to Hydrocodone.

15. Dr. Pamela Hale ,MD (Pain management)
    Crozer Chester Medical Plaza
    One Medical Center
    Upland, PA 19013
    Phone 610-619-7360 Fax 610-619-7366

16. Dr. Alison Britt-Kimmins, MD (Dermatologist)
    Chadds Ford Dermatology
    300 Evergreen Drive, Suite #160

Chadds ford, PA 19342
Phone 610-558-1200

17. Dr. Robert Chideckle, DMD (Dentist)
3309 Edgmont Ave. #333
Brookhaven, PA 19015
Phone # 610-876-8038

18. Dr. Andrew Pratt, DMD (Dentist)
Chadds Ford Dental Assoc.
6 Dickenson Drive, Suite #102
Chadds Ford, PA 19317
Phone # 610-558-5699 Fax 610-558-2309

19. Lynn Johnson, LMT (Massage)
4108 Edgmont Ave.
Brookhaven, PA 19015
Phone # 610-874-3210

20. Dr. Jay Hirsh, MD (Urologist)
30 Medical Center Blvd., Suit #102, POB #1
Upland, PA 19013
Phone # 610-874-6580 Fax 610-874-5504



**DEPARTMENT OF JUSTICE**
NEW CASTLE COUNTY
820 NORTH FRENCH STREET
WILMINGTON, DELAWARE 19801

JOSEPH R. BIDEN, III
ATTORNEY GENERAL

CRIMINAL DIVISION (302) 577-8500
FAX (302) 577-2496
CIVIL DIVISION (302) 577-8400
FAX (302) 577-6630
TTY (302) 577-5783

October 9, 2007

Dr. William Nagle
Springfield Diagnostic Imaging Center
891 Baltimore Pike
Springfield, PA  19064

     *Re:*   *Jack E. Sminkey*

Dear Dr. Nagle:

    Enclosed please find a copy of an authorization for release of medical records, materials and information in compliance with HIPAA and Pursuant to 45 CFR 164.508.  Please provide full and complete copies of all the medical records, information and materials (including protected medical information) of and/or concerning Jack E. Sminkey.  The records should be directed to Marc P. Niedzielski, DAG, Department of Justice, Carvel State Office Building, 820 N. French Street, 6th Floor, Wilmington, DE 19801.

                              Sincerely,

                              Jennifer Mitchell
                              Senior Paralegal

Enclosure

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

JACK E. SMINKEY, Pro se

        Plaintiff,

      v.                          C.A. No. 06-263***

STATE OF DELAWARE, DEPARTMENT   :

OF CORRECTION, RUTH ANN MINNER,   :

STANLEY TAYLOR, ALAN MACHTINGER, :

KATHLEEN MICKLE-ASKIN, RONALD    :

SAULS, ALISON STEVENS, DONNA       :

ANNETTE FRANZE, NICHOLE SHULER.   :

          Defendants

Dear health care provider;                   October 11, 2007

In the spring of 2006 I filed a lawsuit against the above named persons asserting that my legal rights were violated during a brief time of employment with the State of Delaware.

On or about July 30, 2007 I signed an authorization allowing the State of Delaware/Department of Correction access to my medical records. I provided the defendants with your name and address.

A couple providers contacted me regarding the release form I signed and actually appeared offended by what the document stated. While I can assure you I have never been HIV positive, addicted to unlawful drugs, etc., under the Federal Rules of Civil Procedure, the defendants are allowed to inquire into this area of my background.

With the aforementioned said, please kindly comply with this request. If you have any questions, please don't hesitate to contact me.

I am,

Jack Sminkey

(610) 620-3670



# Springfield Diagnostic Imaging Center

891 Baltimore Pike, Springfield, PA 19064

610-543-8860 • Fax 610-543-6237



*Transmittal*

To: _Jennifer Mitchell_          Date: _10/17/07_

Attn: _____

Fax #: _____

From: _Fran Mc Gowan_

Re: _Jack E Sminkey_

*If there is a problem
with this transmission,
please call 610-543-8860*

Number of pages ___2___ including cover page.

Springfield Diagnostic Reads films
For Dr. Crowell.
All Films and billing are done
through Dr. Crowell's office.
I have enclosed a copy
of the Report

CC: Jack Sminkey

This facsimile contains privileged and confidential information intended only for the use of the individual entity named above. You are hereby notified that any dissemination or copying of this facsimile without the permission of the above individual is strictly prohibited

If you have received this facsimile in error, please notify us immediately by telephone and return the original facsimile to us at the above address. *Thank you for your cooperation.*

Mr. Marc Niedzielski, Esquire
Department of Justice
820 N. French Street
Wilmington, DE 19801

RE: Sminkey v State of Delaware, et al.
    C.A. 06-263-***                           November 7, 2007

Dear Mr. Niedzielski;

I am writing in response to your letter dated October 24, 2007.

I do recall your reference to local rule 26.1(c) in your letter to me dated July 23rd. In my response letter to you dated July 30th I stated "I am going to send you a second set of interrogatories and requests that supersedes the first sets". What this means is, instead of re-stating the question pursuant to local rule 26.1(c), I just re-asked the same questions in my second set of interrogatories and request for production of documents. Therefore, I did what you asked; I just didn't do it exactly the way you wanted me to.

I feel compelled to remind you that I don't have a staff, paralegals, and unlimited resources like your office. Moreover, I remind you of Tabron v. Grace 6F. 3d 147, 154 n.2 (3d cir.1993), which requires pro se litigants be granted greater leeway in procedural matters.

My response to the requests in your July 23, 2007 letter is as follows:

No 4 and No 5 – I have not sent you anything because, at the present time, there is nothing to send you.

No 6 – I provided what you requested on or about April 28, 2007.

No 7 – I provided you with a copy of my social security statement in August 2007. Enclosed in another copy. I will provide you with copy of my 2008 statement once I receive it.

Otherwise, this case is evolving; therefore, I don't know what the damages are or what tangible evidence I have at this time.

No 8 – I gave you what I had.

No 9 – I maintain "This question invades the privacy of my family. It is not reasonably calculated to lead to admissible evidence. Additionally, the non-biased social security statement (derived from my family's federal income tax return) shows my income for years 2000-2006. I anticipate my income for 2007 will be around $10,000.00 for the year. The person who prepares our tax returns is a CPA with over 30 years experience. The same person has been preparing our returns for the last 7 years or so. This man is like me, "very honest".

In closing, nothing has changed, as you can see.

I am,

Jack Sminkey, Ph.D.
3402 Edgmont Ave. #333
Brookhaven, PA 19015
jesminkey@comcast.net
610-620-3670

Cc: Honorable Mary Pat Thynge

*Prevent identity theft—protect your Social Security number*

# Your Social Security Statement

SOCIAL SECURITY USA ADMINISTRATION

Prepared especially for Jack E. Sminkey

July 30, 2007

www.socialsecurity.gov

000285021  01 AV  0.312 IA R 0501
JACK E. SMINKEY
190 HARRISON RD
BROOKHAVEN PA  19015-1130

*See inside for your personal information*

### What's inside...

Your Estimated Benefits ..................................................... 2

Your Earnings Record ......................................................... 3

Some Facts About Social Security ................................... 4

If You Need More Information ........................................ 4

To Request This *Statement* In Spanish ........................ 4
(Para Solicitar Una Declaración en Español)

## What Social Security Means To You

This *Social Security Statement* can help you better plan for your financial future. It gives you estimates of your Social Security benefits under current law and updates your latest reported earnings.

Please read this *Statement* carefully. If you see a mistake, please let us know. That's important because your benefits will be based on our record of your lifetime earnings. We recommend you keep a copy of your *Statement* with your financial records.

**Social Security is for people of all ages...**
It's more than a retirement program. Social Security also can provide benefits if you become disabled and help support your family when you die.

**Work to build a secure future...**
Social Security is the largest source of income for most elderly Americans today, but Social Security was never intended to be your only source of income when you retire. You also will need other savings, investments, pensions or retirement accounts to make sure you have enough money to live comfortably when you retire.

Saving and investing wisely are important not only for you and your family, but for the entire country. If you want to learn more about how and why to save, you should visit *www.mymoney.gov*, a federal government website dedicated to teaching all Americans the basics of financial management.

**About Social Security's future...**
Social Security is a compact between generations. For decades, America has kept the promise of security for its workers and their families. Now, however, the Social Security system is facing serious financial problems, and action is needed soon to make sure the system will be sound when today's younger workers are ready for retirement.

In 2017 we will begin paying more in benefits than we collect in taxes. Without changes, by 2041 the Social Security Trust Fund will be exhausted* and there will be enough money to pay only about 75 cents for each dollar of scheduled benefits. We need to resolve these issues soon to make sure Social Security continues to provide a foundation of protection for future generations.

**Social Security on the Net...**
Visit *www.socialsecurity.gov* on the Internet to learn more about Social Security. You can read our publications, use the *Social Security Benefit Calculators* to calculate future benefits or use our easy online forms to apply for benefits.

Michael J. Astrue
Commissioner

* These estimates are based on the intermediate assumptions from the Social Security Trustees' Annual Report to the Congress.

## ur Earnings Record



| Years You Worked | Your Taxed Social Security Earnings | Your Taxed Medicare Earnings |
|---|---|---|
| 1977 | $ 674 | $ 674 |
| 2000 | 52,743 | 52,743 |
| 2001 | 21,621 | 21,621 |
| 2002 | 25,520 | 25,520 |
| 2003 | 27,904 | 27,904 |
| 2004 | 29,655 | 29,655 |
| 2005 | 5,618 | 5,618 |
| 2006 | 7,232 | 7,232 |

You and your family may be eligible for valuable benefits:

When you die, your family may be eligible to receive survivors benefits.

Social Security may help you if you become disabled—even at a young age.

A young person who has worked and paid Social Security taxes in as few as two years can be eligible for disability benefits.

Social Security credits you earn move with you from job to job throughout your career.

**Total Social Security and Medicare taxes paid over your working career through the last year reported on the chart above:**

| | | |
|---|---|---|
| Estimated taxes paid for Social Security: | | Estimated taxes paid for Medicare: |
| You paid: | $39,093 | You paid: $9,202 |
| Your employers paid: | $38,197 | Your employers paid: $8,993 |

Note: You currently pay 6.2 percent of your salary, up to $97,500, in Social Security taxes and 1.45 percent in Medicare taxes on your entire salary. Your employer also pays 6.2 percent in Social Security taxes and 1.45 percent in Medicare taxes for you. If you are self-employed, you pay the combined employee and employer amount of 12.4 percent in Social Security and 2.9 percent in Medicare taxes on your net earnings.

# Help Us Keep Your Earnings Record Accurate

You, your employer and Social Security share responsibility for the accuracy of your earnings record. Since you began working, we recorded your reported earnings under your name and Social Security number. We have updated your record each time your employer (or you, if you're self-employed) reported your earnings.

Remember, it's your earnings, not the amount of taxes you paid or the number of credits you've earned, that determine your benefit amount. When we figure that amount, we base it on your average earnings over your lifetime. If our records are wrong, you may not receive all the benefits to which you're entitled.

**Review this chart carefully** using your own records to make sure our information is correct and that we've recorded each year you worked. You're the only person who can look at the earnings chart and know whether it is complete and correct.

Some or all of your earnings from **last year** may not be shown on your *Statement*. It could be that we still were processing last year's earnings reports when your *Statement* was prepared. Your complete earnings for last year will be shown on next year's *Statement*. **Note:** If you worked for more than one employer during any year, or if you had both earnings and self-employment income, we combined your earnings for the year.

**There's a limit on the amount of earnings on which you pay Social Security taxes each year.** The limit increases yearly. Earnings above the limit will not appear on your earnings chart as Social Security earnings. (For Medicare taxes, the maximum earnings amount began rising in 1991. Since 1994, **all** of your earnings are taxed for Medicare.)

**Call us right away at 1-800-772-1213** (7 a.m.–7 p.m. your local time) if any earnings for years **before last year** are shown incorrectly. If possible, please have your W-2 or tax return for those years available. (If you live outside the U.S., follow the directions at the bottom of page 4.)

073007R 07la 15376U

Mr. Marc Niedzielski, Esquire
Department of Justice
820 N. French Street                                      (By hand)
Wilmington, DE 19801                          November 13, 2007

Dear Mr. Niedzielski,                          (C.A. 06-263***)

Enclosed please find the following:

1. Two "big" black binders as a "show of proof "(as to why I ask the
   questions I ask).
2. The status report for the Court (with two attached exhibits).
3. My response to your October 24th letter.
4. A third set of interrogatories
5. A third set of request for production of documents.

Please note that I have not sent Defendant Minner an interrogatory as it
appears you think she should not have to answer any questions. I await a
response from the court regarding my pending motion. This is Defendant
Mickle-Askins second interrogatory.

I don't foresee depositions anytime soon as I cannot proceed until I receive
all of the discovery documents you are holding.

I have made every effort to streamline discovery by the use of
interrogatories and request for production of documents, as opposed to
asking for some of them during depositions.

Please advise me if defendant Stevens plans to retire soon as she was talking
about moving to Florida shortly after retirement. I would rather depose her
prior to her departure, if possible.

Sincerely,

Jack Sminkey, Ph.D.
3402 Edgmont Avenue # 333
Brookhaven, PA 19015
610.620.3670

Cc: Honorable Mary Pat Thynge