IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JACK E. SMINKEY, Pro se | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-263*** |
| | : | |
| STATE OF DELA WARE, et al., | : | |
| | : | |
| Defendants, | : | |

**DEFENDANT KATHY MICKLE-ASKIN'S RESPONSES TO
PLAINTIFF'S 2nd SET OF INTERROGATORIES**

**General Objection:** Defendant objects as she has already responded to 25 interrogatories propounded by plaintiff. Fed.R.Civ.P. 33(a) limits the parties to 25 interrogatories, that including subparts, without leave of the Court. Without waiving this objection, defendant will respond to the following.

1. *What is your definition of "harassment"?*

    **Response:** Objection, this interrogatory is vague and ambiguous and not reasonably calculated to lead to discoverable evidence nor directed to information within the scope of Rule 26. Without waiving these objections, I can state that based on my training and experience there can be different definitions for the word harassment in different contexts. In addition to various dictionary definitions, there may be a number of the legal definitions as well. However, without a specific context, I cannot provide a meaningful response.

2. *What is your definition of "stalking"?*

    **Response:** Objection, this interrogatory is vague and ambiguous and not reasonably calculated to lead to discoverable evidence nor directed to information within the scope of Rule

26. Without waiving these objections, I can state that based on my training and experience there can be different definitions for the word stalking in different contexts. In addition to various dictionary definitions, there may be a number of the legal definitions as well. However, without a specific context, I cannot provide a meaningful response.

3.    *Who is better to qualified to access appropriate behavior, a licensed psychologist or Alan Machtinger?*

**Response:** Objection, this interrogatory is vague and ambiguous and not reasonably calculated to lead to discoverable evidence nor directed to information within the scope of Rule 26. Without waiving these objections, I would state that a licensed psychologist may be qualified to make a pre-employment assessment based on the limited time spent with the individual in a clinical interview and assuming that the individual is honest. After employment has begun with the Department, Alan Machtinger can make an assessment based on the individual's behaviors and patterns exhibited during the extended length of training and in regards to workplace standards.

4.    *List all behaviors you believe are "appropriate" while participating in P&P training.*

**Response:** Objection, this interrogatory is vague and ambiguous and not reasonably calculated to lead to discoverable evidence nor directed to information within the scope of Rule 26. Without waiving these objections, I would state that it is next to impossible to list all behaviors that are appropriate during P & P training. Some are common sense standards in most places of employment and appropriateness must be examined in the larger context. As a general matter, it is appropriate for trainees to exhibit openness to learning, a

willingness to work as part of a team, openness to constructive criticism concerning skill development and behaviors required for future job performance.

5. *List all behaviors you believe are "inappropriate" while participating in P&P training.*
   **Response:** Please refer to response to interrogatory No. 4.

6. *List all appropriate behaviors considered "appropriate" while teaching P&P training.*
   **Response:** Please refer to response to interrogatory No. 4.

7. *List all behaviors you believe are "inappropriate" while teaching P&P training.*
   **Response:** Please refer to response to interrogatory No. 4.

8. *Do you consider it "appropriate" for state employees to violate written policies?*
   **Response:** Objection, this interrogatory is vague and ambiguous and not reasonably calculated to lead to discoverable evidence nor directed to information within the scope of Rule 26. Without waiving these objections, I cannot adequately respond to this question. Clearly, it is not desirable for employees to violate written policies. However, there might be times when life, health or safety depends on a person's decision that could technically violate a written policy or there could be good faith differences in opinion as to the requirements of a written policy.

9. *Do you consider it "appropriate" for supervisors to discriminate, retaliate, or humiliate employees they supervise?*
   **Response:** Objection, this interrogatory is vague and ambiguous and not reasonably

calculated to lead to discoverable evidence nor directed to information within the scope of Rule 26. Without waiving these objections and without a specific context, this question is difficult to respond to. However, as a general policy supervisors should not intentionally engage in the above behaviors. There may be a situation where the individual's interpretation is not in keeping with the instructor's actual intent. Additionally, there may be situations where health, life and safety issues may result in instructor action that is actually corrective and the person's perception of the instructor's behavior is negative. Additionally, there can be good faith differences in opinion as whether such purported conduct is actually discriminatory, retaliatory or humiliating to a person of normal sensitivities.

10. *Do you consider it "appropriate" for a supervisor to ignore an employee's objection to treatment that violates a written state policies?*

   **Response:**   Please refer to response to interrogatory No. 9.

11. *List all behaviors you observed of plaintiff you consider to be "obsessive".*

   **Response:**:   Objection, this interrogatory is vague and ambiguous and not reasonably calculated to lead to discoverable evidence nor directed to information within the scope of Rule 26. Without waiving these objections and without stating this list is all inclusive, I would state that I was not a trainer in the BOTC class and my analysis occurred after plaintiff was terminated from employment. I considered reports of plaintiff's behaviors and his behaviors that were exhibited during the post-termination conference with Mr. Machtinger, Mr. Grinstead and myself to what is called an obsessive personality trait. As an example, Plaintiff responded that he would not change his behavior during training, that he is who he is, and that he has a smirk.

Additionally, it was reported that plaintiff was sending correspondence to former instructors at their homes, and attempting contacts with class members. All these suggested to me that plaintiff was obsessively centered on himself, was incapable of working in positive manner with others and could not accept constructive criticism.

12. *Is it "appropriate" for a cadet to attack an instructor during boxing training after being told not to do so?*

    **Response:**    Please refer to responses to interrogatories Nos. 4, 8 and 9.

13. *Is it "appropriate" for an instructor to run a cadet into exhaustion during fitness training?*

    **Response:**    Please refer to responses to interrogatories Nos. 4, 8 and 9. By way of further response, all new hired probation officers submit a self-reported physical form regarding their medical condition. If an individual indicates they have health issues or previous injuries they are required to obtain documentation and clearance from their physician prior to participating in the physical training as was done in the plaintiff's case. All cadets are informed that the physical training is rigorous.

14. *Do you believe it is dangerous or unsafe to run a cadet into exhaustion during fitness training?*

    **Response:**    Please refer to responses to interrogatories Nos. 4, 8, 9 and 13.

15. *Is it "inappropriate" for a supervisor to intentionally embarrass, or humiliate a cadet during P&P training?*

**Response:** Please refer to responses to interrogatories Nos. 4, 8, 9 and 13. By way of further response, the interrogatory assumes that the supervisor is intentionally embarrassing or humiliating an individual. There are times when corrective action or feedback is required and the person may be embarrassed without such an intention or the cadet could have personality features that do not allow him or her to accept any form of constructive criticism.

16. *Is it "appropriate" for a female cadet to talk about a thong in class or motion to kick a male cadet in the groin during P&P training?*

**Response:** Please refer to responses to interrogatories Nos. 4, 8, 9, 13 and 15.

17. *Are you aware of a letter plaintiff sent Defendant Sauls on or about May 16, 2005 indicating he opened an investigation of the Department of Correction?*

**Response:** I presently do not have a specific memory of such a letter.

18. *Is it "appropriate" not to respond to a formal request made by a current or former employee?*

**Response:** Please refer to responses to interrogatories Nos. 4, 8, 9, 13 and 15.

19. *Do you believe its "appropriate" not to give a former employee a timely answer regarding why he was terminated?*

**Response:** Please refer to responses to interrogatories Nos. 4, 8, 9, 13 and 15.

20. *Do you believe its "appropriate" for a supervisor to ignore a cadet's explanation for his*

    *behavior?*

    **Response:**    Please refer to responses to interrogatories Nos. 4, 8, 9, 13 and 15.

21.    *Do you believe that judging "appropriate" and "inappropriate" behavior is subjective?*

    **Response:**    Please refer to responses to interrogatories Nos. 4, 8, 9, 13 and 15. By way of further response, there are certain behaviors where the appropriateness of that behavior is more subjective than others. However, there are behaviors wherein the inappropriateness of the behavior is more objective.

22[1].    *What training have you had to be the judge of "appropriate" and "inappropriate" behaviors?*

    **Response:**    In addition to my own life experiences, I have obtained a Masters in Counseling degree, I have participated in behavior modification training, various on-the-job training and Code of Conduct training.

23.    *What training did you give cadets in BOTC class # 1 in "appropriate" and "inappropriate" behaviors?*

    **Response:**  As previously indicated, I was not an instructor in this class.

24.    *Do you believe that when an employee is acting in a supervisory capacity, and he/she is judging "appropriate" and "inappropriate" behaviors using "subjective standards", the supervisory employee and their employer is substantially increasing their risk of*

---

[1] There were two questions numbered 21. The questions following #21 have been renumbered.

*liability?*

**Response:**   I do not know.


25.   *Have you, in the last seven years, complied with all written state policies and executive orders?*

**Response:**   Yes, to the best of my knowledge.


26.   *Name all persons who assisted you with answering this interrogatory.*

**Response:**   The legal objections and actual responses were authored by my attorney with my input as to the factual information.

        **STATE OF DELAWARE**
        **DEPARTMENT OF JUSTICE**

        /s/ Marc P. Niedzielski
        Marc P. Niedzielski, I.D. #2616
        Deputy Attorney General
        Carvel State Building
        820 N. French St., 6th Flr.
        Wilmington, DE  19801
        (302) 577-8400
        Attorney for Defendants


**VERIFICATION**

I, the undersigned, do verify that under the penalty of perjury that the factual information contained in the above responses are true and correct to the best of my information and belief.


      /s/ Kathy Mickle-Askin


DATED:  December 20, 2007

## CERTIFICATE OF SERVICE

I certify that on the date indicated below I served by e-mail a copy of the attached document on the following:

Jack Sminkey
3402 Edgemont Avenue, # 333
Brookhaven, PA  19005
jesminkey@comcast.net

/s/ Marc P. Niedzielski
Marc P. Niedzielski (2616)
Deputy Attorney General
Department of Justice
820 North French Street
Carvel Building, 6th Floor
Wilmington, DE 19801
(302) 577-8324

DATED: December 20, 2007