# ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2008 JUN 30  PM 2: 50

June 14, 2008

Honorable Mary Pat Thynge
United States District Court
844 King Street/ Lock Box #18
Wilmington, DE 19801

RE: Sminkey v State of Delaware/Department of Correction      C.A. 06-263-GMS

Dear Judge Thynge:

Pursuant to paragraph 3(e) of the scheduling order dated October 16, 2007, regarding discovery disputes, your order indicated discovery disputes will be handled by letter and not formal motion. The courts March 14, 2008 order re-affirms the same.

Agreed upon discovery framework:

Via email exchanges throughout March and April 2007, plaintiff and defense counsel agreed to:

1. Streamline discovery by going back seven years in time from around April 16, 2007 regarding employment and medical information, etc.

2. Plaintiff advised he would not attempt to embarrass defendants, abuse discovery and provide complete copies of discovery documents, which he has done.

Discovery efforts:

Plaintiff and defense counsel have exchanged formal letters and emails approximately twenty (20) times during discovery, regarding discovery.

In March 2008, plaintiff deposed nine (9) defendants and a psychologist for the defense.

Plaintiff agreed to forgo deposing Governor Ruth Ann Minner if we agreed to a stipulation regarding the Governor. Defense counsel would agree to allow plaintiff two more depositions. Plaintiff and Mr. Niedzielski were unable to agree on a stipulation. (See attached proposed stipulations for further details found in exhibit #1).

Unresolved discovery items:

1. Defendant Ruth Ann Minner – Plaintiff believes he is entitled to depose defendant Minner because: 1) She is specifically named in counts I, II, XX of the complaint, 2) She is the highest ranking policy maker in State Government, 3) Defendant Minner appointed department heads, set written policy, ordered investigations, issued executive orders relevant to discrimination and retaliation, 4) Defendant Minner has personal knowledge regarding  issues of discrimination

Honorable Mary Pat Thynge
June 4, 2008
Page 2

and retaliation in State Government 5) We were unsuccessful in working out a stipulation for the Governor, and, 6) Mr. Niedzielski never sought to have defendant Minner, (or anyone else) removed as a defendant (See exhibit #1).

2. Injury reports (not workers' compensation records) of all persons injured while doing physical fitness (circuit training) from 1/1/2000- 4/30/07. Relevant to count XIV and XV of the complaint (See exhibit #2).

3. Training certificates/documentation for all instructors qualified to teach circuit training, namely defendants Donna Watson, Nicole Shuler and Annette Franze. Relevant to count XIV and XV of the complaint.

4. The race, age and gender of all defendants in this lawsuit and all BOTC Class #1 cadets on 3/1/2005. This is an age, race, and gender discrimination claim.

5. A listing of every question Dr. DeBernardo (psychologist) asked plaintiff when she conducted her clinical interview of plaintiff in February 2005. Dr. De-Bernardo is a defense expert. There is a dispute as to exactly what the doctor asked and how she asked certain questions.

6. Dr. DeBernardo refused to release an original copy of plaintiff's MMPI-2 psychological test without a court order. Hence, a court order is requested.

7. Plaintiff respectfully asks the court to order Mr. Jack Reyes (fact witness) to clarify his race. In C.A. No. 02-1283, he says he is a "Hispanic-American" and was a victim of discrimination because of his race. He claims he was passed over for promotion in favor of white males. When plaintiff deposed him in March 2008, he testified he is a "White-American". (See exhibit #3).

8. A copy of all dismissal letters issued to cadets who were involuntarily terminated prior to completion of training from 01/01/2000 – 4/30/2007. The reasons are relevant to the wrongful termination claim in the matter.

9. A listing of all cadets involuntarily terminated during cadet training then re-hired after their post-termination meeting from 1/1/2000-4/30/2007, including age, race and sex. The age, race, and sex of "re-hires" are relevant to this case.

10. All high school diplomas, GED's, college diplomas and resume (current) for all defendants who possess or earned them, but has not yet provided them. This is basic information which speaks to basic qualifications of each defendant.

11. The newest version of all defendants' official training records. Records are not updated, consistent, and presently not very reliable.

12. Mr. Saul's supervisory training certificate from the United States Air Force (Re. dep.).

Honorable Mary Pat Thynge
June 4, 2008
Page 3

   13. Mr. Saul's documented training in civil rights law (Re. dep. P100, line 20).

   14. Signed depositions/errata sheets of: Mr. Jack Reyes, Ms. Annette Franze, Ms.
       Nicole Shuler and, Ms. Dawn Stevens-Arbaugh.


Plaintiff respectfully request the court order defense counsel produce defendant Ruth Ann
Minner for deposition, documents, and clarifications indicated above in a timely manner.
Plaintiff believes opposing counsel is unwilling to produce same so as to impede
discovery efforts, conceal facts, and to force plaintiff to file unnecessary motions.


Respectfully submitted,

Jack Sminkey, Plaintiff
3402 Edgemont Avenue #333
Brookhaven, PA 19015
(610) 620-3670

Filed by hand: June 30, 2008

# Certificate of Service

On June 30, 2008, I Jack Sminkey hand Delivered a Discovery Dispute letter to the person addressed below.

Mr. Marc Niedzielski, Esq
820 N. French St. 6th Fl
Wilmington, DE 19801

Jack Sminkey, Plaintiff
3402 Edgmont Ave #33
Brookhaven PA 19015
610-620-3670

Mr. Marc Niedzielski, Esquire
Department of Justice/Civil Division
820 North French Street, 6th Floor
Wilmington, DE 19801

BY HAND
March 10, 2008

RE:  Deposition of Defendant Minner (06-0263)

Dear Mr. Niedzielski,

I am writing to advise you that I would agree to depose Defendant Minner on March 19, 2008 right after the deposition of Mr. Machtinger.

Defendant Minner is a very important and relevant witness. Investigation reveals Ms. Minner was elected into office in January 2001. One of the first things she did as the highest ranking policy maker in State Government was address issues of discrimination.

We both agree Ms. Minner is a defendant in this matter and this is a Title VII claim, with additional 1983 claims.

As you may know, defendant Minner has been sued many times by present or former state employees asserting claims of discrimination, retaliation, etc.

Additionally, defendant Minner has made numerous voluntary statements to members of the media regarding issues of discrimination, retaliation, etc. As you know, newspaper articles are not admissible as evidence in a court of law, but the deposition testimony of defendant Minner is.

During her tenure in office, Governor Minner appointed department heads, set written policy, ordered investigations, and issued executive orders relevant to issues of discrimination and retaliation, etc.

Governor Minner even received a certified letter from me seeking her assistance with this matter prior to my commencing litigation.

I won't know what other information defendant Minner has that may lead to discoverable information until I depose her.

Exhibit #1 (10 pages)

For all of the reasons indicated above, I believe defendant Minner needs to appear at her scheduled deposition or on the afternoon of March 19, 2008.

I look forward to your reply regarding this, and other outstanding items not later than 3 PM today. Thanks for your prompt attention to this matter.

I am,

Jack Sminkey, Ph.D.
Plaintiff, Pro se
3402 Edgmont Avenue #333
Brookhaven, PA 19015
(610) 620-3670

DRAFT

Stipulation

1.    Plaintiff Jack Sminkey, Pro se and Defendant Ruth Ann Minner, by and through her counsel, Mr. Marc Niedzielski, Esquire agrees to the following stipulation in Lieu of deposing a sitting Governor.

2.    I, Governor Ruth Ann Minner was elected into office in January 2001 amidst allegations of Racism involving the Delaware State Police.

3.    On January 23, 2001 I signed Executive Order No. 10 establishing new equal opportunity hiring standards for Delaware government and prohibiting discrimination in state employment based on gender, race, color, religion, natural origin, marital status, disability, sexual orientation, or Vietnam Era Veterans status (see excerpts below)

4.    The State of Delaware's commitment to equal employment opportunity is hereby affirmed and heads of each Department and Agency within the Executive Branch (collectively "Executive Branch Agencies") are directed to pursue diligently the recruitment and promotion of qualified women and minorities and to be vigilant in complying with the laws prohibiting discrimination in employment

5.    The work atmosphere in executive branch agencies shall be one that fosters mutual respect and understanding among persons of different races, sexes, and faiths.

Affirmative Action Plan

6.    A specific statement of goals and objectives designed to assure equal employment opportunities in hiring and promotion and to eliminate any unlawful discrimination in Agency employment. A specific statement of action steps designed to maximize the degree to which qualified minorities and women are represented in the Agency as compared to Delaware's labor pool

Complaints

7.    Each Agency shall include in its Affirmative Action Plan a description of a mechanism or complaint procedure to permit and encourage employees to discuss any problems resulting from alleged bias, discrimination, lack of equal employment opportunity or any similar matters with appropriate division or Agency supervisory personnel. The procedure shall provide for the lodging of employee complaints and for a response to be made within a specified reasonable period of time. The employee shall be advised of his right to file a formal complaint with the Labor Law Enforcement Section of the Department of Labor and shall receive such assistance as may be requested from his Agency EEO officer.

8.    On August 17, 2001 I executed Executive Order No. 19 directing an investigation into the workplace climate at the State Police, and mandating full compliance to any state investigations of the State Police.

Page Two

9.    The Director of State Personnel is directed to undertake an investigation of the working conditions at the Delaware State Police. This investigation shall include: Findings as to the compliance of the Delaware State Police with Executive Order No 10, signed January 30, 2001 and findings as to the working conditions and organizational culture for women and minorities at the Delaware State Police, and conditions that might impede women and minorities from remaining with the State Police and advancing through the ranks of the State Police.

10.   In the summer of 2001, I removed State Police Col Gerald Pepper (Caucasian male) an appointee, due to persistent problems involving employment and morale within the DSP.

11.   On December 1, 2001 Lisa Blunt-Bradley, Director State personnel office delivered a 76 report titled "Review of the Delaware State Police".

12.   Under the guidance and leadership of Colonel Pepper, the state was sued by minorities for discrimination, disparate treatment, retaliation, and/or denied promotions.

13.   Under the guidance and leadership of State Police Superintendent Aaron Chaffinch during the years 2002 – 2004, the state has sued mostly by Caucasian males for (reverse) discrimination, retaliation, and other constitutional claims.

14.   As a result of the many lawsuits filed against the DSP from the later 1990's through 2005, the State of Delaware has spent millions of dollars as a result of verdicts, settlements, and legal fees resulting from claims of discrimination.

15.   From 2000 – 2007 the State of Delaware/Department of Correction has been sued at least a dozen times by preset or former employees alleging discrimination, retaliation, or constitutional violations.

16.   As a result of the many lawsuits filed against the Department of Correction, the State of Delaware has spent millions of dollars as a result of verdicts, settlements, and legal fees associated with claims of discrimination, retaliation and employment related civil rights violations.

17.   The United States Department of Justice and the Delaware Department of Justice entered into two agreements (memorandum of law) with the State of Delaware. The first one was with the Delaware State Police the second one was with the Delaware Department of Correction. Both agreements were regarding civil rights violations allegedly committed by the State of Delaware.

18.   The State of Delaware has not admitted liability in any agreements with Federal Officials. The State of Delaware has spent millions of dollars defending against the Federal Government.

19.   The State of Delaware is presently working on improving the way it does business regarding previous deficiencies.

Page Three

20.    Despite all of the bad press and expense, I did not discipline, ask for a resignation, or
       terminate either department head, Mr. Stanley Taylor (corrections commissioner) or
       Aaron Chaffinch (state police superintendent).

21.    Around May 20, 2005 my office received a certified letter and packet of documents dated
       May 16, 2005 from former employee Jack Sminkey regarding his brief employment with
       the Department of Correction.

22.    On June 17, 2005 my office sent Mr. Sminkey a letter indicating we referred the matter
       back to the Department of Correction for a response to his concerns.

23.    All of the policies, investigations or executive orders I approved while in office were for
       the purpose of correcting discrimination and employment associated problems. I, in no
       way, would ever sanction or promote any form of discrimination, retaliation, or other
       civil rights violations against any person, employee, former employee, resident, or
       prisoner under the custody or control of the State of Delaware or department of
       Correction.


Dated: _____          _____
                                         Jack Sminkey
                                         Plaintiff, Pro se


Dated: _____          _____
                                         Ruth Ann Minner
                                         Governor of Delaware


Dated: _____          _____
                                         Marc Niedzielski, Esquire
                                         Counsel for Defendant

**From:** "Niedzielski Marc (DOJ)" <Marc.Niedzielski@state.de.us>

**To:** <jesminkey@comcast.net>

**Subject:** Sminkey v. DOC

**Date:** Friday, May 16, 2008 12:49:36 PM

Mr. Sminkey:

Attached you will find my proposed stipulation with changes that includes some of your proposed stipulations regarding the governor. Please review and get back to me.

I will be sending by regular mail you some of the documents you requested from some of the witnesses.

I have provided you with the names of employees who may have had worker compensation claims while at training. I do not have access to the actual medical records, nor could I legally obtain them for this matter, nor do such records or information have anything to do with your claims.

Thanks for your cooperation.

**(Attachments successfully scanned for viruses.)**

**Attachment 1:** (application/msword)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JACK E. SMINKEY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    `C.A.No. 06-263-GMS |
| | : |
| STATE OF DELAWARE, et al., | : |
| | : |
| Defendants. | : |

## **STIPULATION**

The above parties do hereby agree and stipulate to the following facts, but do not stipulate to their admissibility or relevance:

1.     Ruth Ann Minner is the Governor of the State of Delaware and was first elected to that office in November 2000.

2.     Governor Minner was reelected to her office in November 2004.

3.     Stanley W. Taylor, Jr. was appointed to serve as the Commissioner of the Department of Correction in the Fall of 1995 and continued to serve in that capacity until his voluntary retirement on February 1, 2007.

4.     On January 23, 2001, Governor Minner signed and promulgated Executive Order No. 10. A true and authentic copy of the contents of Executive Order No. 10 is available on-line at:

http://governor.delaware.gov/orders/eo_10.shtml#TopOfPage

4.    On August 17, 2001, Governor Minner signed and promulgated Executive Order No. 19. A true and authentic copy of the contents of Executive Order No. 19 is available on-line at:

http://governor.delaware.gov/orders/eo_19.shtml#TopOfPage

5.    Plaintiff was employed as a cadet probation and parole officer with the Delaware Department of Correction from February 25, 2005 until April 29, 2005.



Jack Sminkey                                Marc P. Niedzielski
3402 Edgemont Avenue, # 333                 Deputy Attorney General
Brookhaven, PA 19005                        820 N. French Street, 6th Floor
Plaintiff                                   Wilmington, DE 19801
                                            Attorney for Defendants

DATED:

| | |
|---|---|
| **From:** | jesminkey@comcast.net |
| **To:** | "Niedzielski Marc (DOJ)" <Marc.Niedzielski@state.de.us> |
| **CC:** | jesminkey@comcast.net |
| **Subject:** | Re: Sminkey v. DOC |
| **Date:** | Wednesday, May 28, 2008 4:53:47 PM |

Dear Mr. Niedzielski,

I will say "no" to your proposed stipulation as it is does not reflect the "truth" about Governor Minner's administration. I would not be opposed in signing a stipulation regarding my law enforcement career so long as it is accurate and truthful. Your version is not (because you do not have an understanding of what transpired, the timelines, why I was prescribed certain medications, etc.) If you conducted a good deposition of me, I would have answered all of those questions. If you would have deposed a few of my doctors, they would have told you exactly why they prescribed what they did, etc.

I did receive some of the discovery you sent. I did receive the "Aerobic Circuit Exercise Training Program Guidelines". Nowhere did I see that an instructor is supposed to "help" a cadet finish the exercises. In fact, it says it's designed to "adapt to the differing fitness levels" all can enjoy exercise and movement in a social environment, free from ridicule often reaped upon those who can't keep up" (ref. doc.2531).

Additionally, I do not have the signed errata sheets from Ms Franze, Shuler, Arbaugh or Mr. Reyes. I did receive the CV from Mrs. Mickle-Askin and Mr. Mactinger. I assume this is all I am getting without a court order.

I do not have the names of employees who have had worker compensation claims, nor have I asked for that. I would like a listing of persons who were injuried during circuit training (from April 16, 2007 and back seven years, see our email exchange around April 16, 2007) and had to go the the hospital or doctor for treatment. I would expect most of these injuries to be strains/sprains. This is germane to paragraphs #185-189 of the complaint.

Since we seem to be having a major "disconnect", let me have the burden to showing the court why I want the documents and governor for deposition. I will abide by what ever the court orders, and I am sure you will also.

I don't believe there is any need to respond to this email. I will copy myself with it. Therefore, if I get it, I am sure you will (I assume you will open it). Although I am not a computer geek, and therefore, do not know how to fix strange computer screens at the DOC, I do understand the basic functions of them.

**12) Provide a complete copy of all medical, hospital, workers compensation, or injury reports authorized as a result of a cadet seeking medical attention while in probation and parole or correctional officer training from 1/1/2000 thru 4/30/2007.**

Exhibit #2 (1 page)

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Sergeant JACK REYES and Sergeant JOSE ANTONIO HERNANDEZ, | : |
| | : |
| Plaintiffs, | :     $\therefore$ 0 2 - 1 2 8 3 |
| | :     C.A. No. _____ |
| V. | : |
| | : |
| SHERRY FREEBERRY and Colonel JOHN L. CUNNINGHAM, both individually and in their official capacity, and NEW CASTLE COUNTY, a municipal corporation, | : |
| | : |
| | : |
| | : |
| | :     Trial By Jury Demanded |
| | : |
| | : |
| Defendants. | : |

**COMPLAINT**

1.     This is a case of continuing race and national origin discrimination in promotions, retaliation and constructive discharge against Hispanic-American New Castle County police officers.

**I.  JURISDICTION**

2.     The jurisdiction of this Court is invoked pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981; 42 U.S.C. § 1981a, the Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ["Title VII"]; 28 U.S.C. §§ 1331, 1337, 1343, 2201 and 2202, and the Fourteenth Amendment to the U.S. Constitution.  The causes of action arise under Title VII, 42

-1-

Exhibit #3 (5 pages)



# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

Sergeant JACK REYES and Sergeant       :
JOSE ANTONIO HERNANDEZ,                :
                                       :
        Plaintiffs,                    :
                                       :    C.A. No. 02-1283-SLR
                                       :
                                       :
SHERRY FREEBERRY and Colonel           :
JOHN L. CUNNINGHAM, both               :
individually and in their             :
official capacity, and NEW            :
CASTLE COUNTY, a municipal             :    Trial By Jury Demanded
corporation,                          :
                                       :
        Defendants.                    :

### RULE 15 (a) AMENDED COMPLAINT[1]

1.      This is a case of continuing race and national origin
discrimination in promotions, retaliation and constructive
discharge against Hispanic-American New Castle County police
officers.

### I.    JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to
the Civil Rights Act of 1866, 42 U.S.C. § 1981; 42 U.S.C. §
1981a, the Civil Rights Act of 1991, Pub.L. No. 102-166, 105
Stat. 1071; Title VII of the Civil Rights Act of 1964, 42 U.S.C.

---

[1] No responsive pleading having been filed, as of right
plaintiffs hereby amend the Complaint which they filed in this
action.   The amendment adds paragraphs 91 - 99, which add Counts
XII, XIII and XIV, and it does not alter any previous paragraphs
of the original Complaint or the Wherefore clause.

-1-

ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Sergeant JACK REYES and Sergeant      :
JOSE ANTONIO HERNANDEZ,               :
                                      :
        Plaintiffs,                   :
                                      :     C.A. No. 02-1283-JKJ
                                      :
                                      :
SHERRY FREEBERRY and Colonel          :
JOHN L. CUNNINGHAM, both              :
individually and in their            :
official capacity, and NEW            :
CASTLE COUNTY, a municipal            :     Trial By Jury Demanded
corporation,                          :
                                      :
        Defendants.                   :

## Plaintiffs' Second Amended Complaint

1.      This is a case of continuing race and national origin
discrimination in promotions, retaliation and constructive
discharge against Hispanic-American New Castle County police
officers, as well as retaliation for protected speech and
petition.

### I.  JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to
the Civil Rights Act of 1866, 42 U.S.C. § 1981; 42 U.S.C. §
1981a, the Civil Rights Act of 1991, Pub.L. No. 102-166, 105
Stat. 1071; Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§§ 2000e et seq. ["Title VII"]; 28 U.S.C. §§ 1331, 1337, 1343,

-1-

IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF DELAWARE

- - -

JACK E. SMINKEY,    : CIVIL ACTION
Pro Se          :
                :
    v.      :
                :
STATE OF DELAWARE,  :
et al.       : NO. 06-263-GMS

- - -

MARCH 19, 2008

- - -


        Oral deposition of

JACK D. REYES taken pursuant to notice,

was held at the offices of ESQUIRE

DEPOSITION SERVICES, 1201 North Orange

Street, Suite 760, Wilmington, Delaware

beginning at 1:43 p.m., on the above

date, before Dottyann Y. Walsh, a

Certified Court Reporter and Notary

Public in the State of Delaware.

        - - -

        ESQUIRE DEPOSITION SERVICES
            Suite 760
        1201 North Orange Street
        Wilmington, Delaware 19801
            (302) 426-9857

-JACK D. REYES

4

Page 10

1      Q.   Do you recall a sign there
2   that had cadet parking?
3      A.   No.
4         MR. NIEDZIELSKI: This photo
5      shows there is no sign there
6      presently?
7         MR. SMINKEY: Presently,
8      there is not.
9         MR. NIEDZIELSKI: What you
10     are trying to say is at one point
11     there was a sign there during
12     training.
13        MR. SMINKEY: That's right.
14     During our training class.
15        MR. NIEDZIELSKI: Better way
16     to ask the question, in photo 3,
17     do you recall if there was a sign
18     located where presently there is a
19     green tab that says sign?
20        THE WITNESS:  No.
21  BY MR. SMINKEY:
22     Q.   Do you recall Ms. Watson
23  telling us that cadets had to park behind
24  signs?

Page 11

1      A.   No.  Sorry.
2      Q.   That's okay.  If you don't
3   recall, that's fine.
4         (Exhibit Reyes-2 marked for
5      identification.)
6   BY MR. SMINKEY:
7      Q.   Mr. Reyes, does this look
8   like the training schedule we got for our
9   class?
10        MR. NIEDZIELSKI: For the
11     record, there is handwriting on
12     this exhibit, is that correct?
13        MR. SMINKEY: Yes.
14        MR. NIEDZIELSKI: It would
15     not have been that way when he got
16     it.
17        MR. SMINKEY: That's
18     correct.
19  BY MR. SMINKEY:
20     Q.   The handwriting is my
21  handwriting, but the training calendar
22  for the months of February, March, April
23  would have been what we were given around
24  the first day of class.

Page 12

1         MR. NIEDZIELSKI: Do you
2      recall that being the schedule
3      that you were given?
4         THE WITNESS: Looks
5      familiar, yeah.
6   BY MR. SMINKEY:
7      Q.   Suffice to say, Mr. Reyes,
8   was this schedule our strict schedule
9   that we abided by or did sometimes things
10  changed as we went through training?
11     A.   Things changed.
12     Q.   Next thing is I want to call
13  your attention to BOTC recalls, I'm not
14  going to mark this because he knows what
15  it is.  This is a listing that one of our
16  cadets made up.  Take a look at it, scan
17  it.
18        Do you recall the names on
19  that list?
20     A.   Yes.
21     Q.   Fair to say that is
22  reflective of our cadet class going
23  through training?
24     A.   Yes.

Page 13

1      Q.   Your name is Jack Reyes,
2   correct?
3      A.   Yes.
4      Q.   Derrick McDowell, do you
5   recall him?
6      A.   Yes.
7      Q.   What race does he appear to
8   be?
9      A.   What race he appears to be?
10     Q.   Yup.
11     A.   An American.
12     Q.   Is he white, black,
13  Hispanic?
14     A.   White.
15     Q.   What race are you?
16     A.   American, white.
17     Q.   You are white?
18     A.   Uh-huh.
19     Q.   How about Allison Justiano?
20     A.   White.
21     Q.   Stacy Rauh?
22     A.   White.
23     Q.   Dawn Stevens-Arbaugh?
24     A.   White.

ESQUIRE DEPOSITION SERVICES

**13) Provide a complete copy of all dismissal letters issued to DOC cadets who were terminated prior to the completion of training from 1/1/2000 thru 4/30/2007.**

Attached is the standard format used for every Cadet dismissal

$E\forall hibi+\#4\ (3\ pages)$

# D000075 – D000095
# Will not be produced



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
245 MCKEE ROAD
DOVER DELAWARE 19904
Telephone: (302) 739-5601
Fax: (302) 739-5751

Office of the
Commissioner

March 2, 2005

Via Certified and Regular Mail

John Doe
_____ Drive
_____ DE 00000

Dear Mr. Doe:

   This is to confirm that you are being dismissed from employment with the Department of Correction, effective 4:30 p.m., Monday, 28 February, 2005. This action is being taken due to

   If you have any questions, please feel free to contact the Employee Development Center.

                    Sincerely,

                    Carl Danberg
                    Commissioner

cc:   Kathy Mickle-Askin, Training Academy Administrator
      Personnel file

**D000097**

Marc Niedzielski, Esquire
Department of Justice/Civil Division
820 N. French Street
Wilmington, DE 19801

by hand
June 30, 2008

RE: Sminkey v State of Delaware/Department of Correction  06-263-GMS

Dear Mr. Niedzielski:

Enclosed please find the following documents with exhibits:

- The discovery dispute letter

- Motion for protective order

- Motion in limine

- Motion to strike defense expert

In response to your email dated June 27, 2008, I agree that we need the Judge to resolve the matter involving Defendant Ruth Ann Minner. If you recall, you suggested we agree to a stipulation in lieu of deposing the Governor. You rejected my truthful and factual stipulation and replied a couple of months later with a stipulation primarily for me. I rejected your version.

In March 2008, you verbally told me you would not produce Governor Ruth Ann Minner without a court order. Additionally, in November 2007, you advised me verbally you like to have "fun" with some of your cases. This brings us to now; all of this being the case, the only person who can resolve our disputes is the Judge.

If any of my other motions are premature, I trust the Judge will tell me the court will revisit them at the appropriate time.

On March 28, 2008, I sent you the letter you reference in your email. On April 1st I sent you the newspaper articles regarding the City of New Castle matter. If you recall, April 1, 2008 was the discovery deadline.

With regard to the City of New Castle, I sent you all I had. Remember, this matter is over twenty years old. Because of the mutual release with the City of New Castle, I was unable to discuss the City of New Castle at my deposition. Therefore, the best way for me to be completely truthful about the City of New Castle, without violating the agreement with the City of New Castle, is to give you the newspaper articles that were published in the public domain.

You may also recall that I did not recall the name of the New Castle City solicitor while testifying at my deposition. The newspaper articles documented the city solicitor's name and a few others things I could not recall at my deposition. Per our interrogatories, we are required to update as needed.

Marc Niedzielski, Esquire
June 30, 2008
Page 2

If my memory serves me right, Mr. Daniel Wolcott, Esquire was the city solicitor for the City of
New Castle. When I appealed for a public hearing, Mr. Wolcott was replaced by Mr. Cavanaugh.

The purpose of the March 28th letter was to explain timelines and facts in a clear and concise
manner in an effort to help you understand the background and facts of this case. I don't think
any person has the mental capacity to take hundreds, if not thousands of documents up to twenty
three (23) years old and really be able to put it in perspective. I did this for you in just three
pages. I hope it was helpful.

Motions, character, credibility, admissibility, relevance, impeaching the witness are all separate
issues that will be dealt with at the appropriate time.

With regard to the protective order, I would prefer the Judge to resolve this matter. Obviously, if I
did something incorrect, the Judge will correct me and I will graciously and respectfully stand
corrected.

Based upon your legal positions and emails, etc, I do not believe you really know the factual
history of the plaintiff. This will hinder you at trial. I believe I have an obligation to you and the
court to be truthful, even when the information can be viewed as negative toward me. This goes
to the character and credibility of the plaintiff. I do not believe the Judge or Jury is looking for a
'saint'. Obviously, any person our ages have made mistakes in our lives.

I do think outcomes would have been different if I fixed trials, supported illegal discrimination,
immoral behavior, etc. However, I was told many years ago by very educated and experienced
police commanders that: "performing the execution of the duties of a police officer may involve
assuming responsibility for difficult and unpleasant tasks" (See Doc 2673). "Pressure" is not a
valid excuse not to insure confidence and fairness in the administration of justice.

I know many, many, law enforcement officers who have a lot less integrity that I do. Some were
police chiefs or high ranking policy makers, Deputy Attorney General's, Attorneys, and Family
Court Commissioners (like Bernard Pepukayi).

In closing, the truth of the matter is that the most any combination of people can find on me over
the last twenty years is that I have a smirk, I didn't wear a hat for a few minutes fifteen years ago
when it was 95 degrees, and a few other silly things that I have been unable to recall.

I think what we really need to do is make sure that felons with bad morals (like drug dealers)
never sit on the bench. State troopers that rob people go to jail. And that Police Officers who did
something minor that was wrong, not be required to live with the mistake forever, regardless of
the motives of their employers.

I am
Jack E. Sminkey, Plaintiff
3402 Edgemont Avenue, # 333
Brookhaven, PA 19015
(610) 620-3670

Cc: Filed with court: June 30, 2008