# ORIGINAL

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE



FILED
CLERK, U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2008 JUN 30  PM 2: 49

| | | |
|---|---|---|
| JACK E. SMINKEY, Pro se | : | |
| Plaintiff, | : | |
| STATE OF DELAWARE, et al., | : | C.A. NO. 06-263-GMS |
| Defendants | : | |

1. NOW COMES plaintiff, Jack Sminkey and moves the court to enter a protective order with regard to discovery.
2. Plaintiff and defense counsel has attempted to work out discovery issues. Most recently, plaintiff and defense counsel have exchanged e-mails regarding plaintiff seeking a protective order, with negative results.
3. Plaintiff asserts, defense counsel is causing plaintiff undue burden, annoyance and embarrassment regarding discovery including:
   a. Failing to produce discovery materials he promised
   b. Failing to produce discovery material clearly relevant to the case, claiming the documents or request(s) are irrelevant.
   c. Failing to produce defendant Ruth Ann Minner for deposition and advising plaintiff he will not do so without a court order.
   d. Failing to allow the psychologist to release a copy of the MMPI-2 test of plaintiff.
   e. Seeking discovery documents from the city of New Castle knowing they are not relevant to this litigation, and done for the purpose of damaging plaintiff's reputation and embarrassing plaintiff.
   f. Providing incomplete or evasive answers to interrogatories questions or providing blanket objections.
   g. Failing to abide by the framework agreed to for discovery regarding streamlining the case and going back in time seven years from April 2007.
   h. Preparing/counseling fact witnesses Mr. Niedzielski does not represent (See attached deposition starting p39, line 10 through p42 line 10).

Wherefore, plaintiff Jack Sminkey moves your Honorable Court to enter and order requiring counsel to

1. Abide by his promises to provide all discovery material promised or sought by plaintiff.

2. Order the release of the MMPI-2 test in the possession of the psychologist.
3. Order Defendant Ruth Ann Minner to appear for deposition within 30 days of the court's order
4. Order defense counsel to abide by the seven (7) year time frame previously agreed to.
5. Order defense counsel not to use or file further documents with the court that he received from the City of New Castle.
6. Order all documents "sealed" that pre-date April 2000.

Dated: June 15, 2008

Filed by hand: June 30, 2008

Jack Sminkey, Plaintiff

3402 Edgemont Avenue; #333

Brookhaven, PA 19015
(610) 620-3670

Page 38

1      MR. NIEDZIELSKI: Where is
2    that?
3          MR. SMINKEY: Paragraph 19.
4    I don't know that this involved
5    him. I just thought I would ask
6    him.
7    BY MR. SMINKEY:
8      Q.   Paragraph 19, if you would
9    take a moment to read that.
10     A.   Okay.
11     Q.   Do you recall that episode?
12     A.   No.
13     Q.   Mr. Reyes, do you recall us
14   talking a day or two after your
15   graduation by telephone?
16     A.   No.
17     Q.   Mr. Reyes, what is the
18   status of your lawsuit that is pending?
19     A.   It's pending.
20     Q.   Still pending?
21     A.   Yeah.
22     Q.   Are you represented by an
23   attorney today?
24     A.   Today? No.

Page 39

1      Q.   Right now.
2      A.   No.
3      Q.   Can you tell me every bit of
4    conversation you have had with
5    Mr. Niedzielski today?
6      A.   Today?
7      Q.   Today.
8      A.   Nothing. Other than what we
9    have been sitting here talking.
10     Q.   Did you have any
11   conversations with Mr. Niedzielski in the
12   last month?
13     A.   Yes.
14     Q.   What were those
15   conversations?
16     A.   There was a prep last week
17   where he told us we were obligated to
18   tell the truth. Ran through all of the
19   questions that were asked. If there is
20   one you don't need to be -- there is one
21   that you shouldn't answer, I will tell
22   you.
23     Q.   So you are saying that
24   Mr. Niedzielski represented you last week

Page 40

1    in preparation for this deposition, is
2    that correct?
3      A.   I didn't say that.
4      Q.   Clarify for me, please.
5      A.   I said I had a meeting with
6    Mr. Niedzielski.
7      Q.   Was it a one-on-one meeting?
8      A.   No.
9      Q.   It was a group meeting.
10     A.   There was three of us I
11   believe.
12     Q.   Who were the three people?
13     A.   Mr. Niedzielski, is that how
14   you say it?
15         MR. NIEDZIELSKI:
16   Niedzielski.
17         THE WITNESS: Niedzielski,
18   Dawn Stevens and myself.
19         (Discussion off the record.)
20         MR. SMINKEY: Is there any
21   reason why you were having a
22   meeting with him when they are
23   witnesses, you are not
24   representing them?

Page 41

1          MR. NIEDZIELSKI: I have the
2    right to meet with anyone who
3    wishes to meet with me. I don't
4    need your permission to do that.
5          MR. SMINKEY: Asking a
6    question.
7          MR. NIEDZIELSKI: I can meet
8    with anyone who is willing to meet
9    with me.
10         MR. SMINKEY: I agree.
11         MR. NIEDZIELSKI: And I'm
12   permitted, and I do prep them, I
13   explain to them the importance of
14   telling the truth.
15         MR. SMINKEY: I appreciate
16   that.
17         MR. NIEDZIELSKI: And I
18   explain to them making sure their
19   responses are verbal. So to save
20   you time so when you are deposing
21   them, you don't have to go through
22   those types of things.
23         MR. SMINKEY: Did you talk
24   with Mr. -- Mr. Reyes, did he talk

(Pages 38 to 41)

-JACK D. REYES

12

Page 42

1   with you at all about the case or
2   the testimony or anything like
3   that?
4       THE WITNESS: He asked me
5   what I thought you were going to
6   ask me. And I said it was
7   probably going to be everything
8   about Sauls or about Mack. That
9   was the only thing I could
10  remember.
11  BY MR. SMINKEY:
12      Q.    So that was basically --
13      A.    No, I'm lying.
14      Q.    Don't lie. We don't want
15  you to do that.
16      A.    I misspoke, I'm not lying.
17  About the Mack and about the fart
18  machine.
19      Q.    Oh, yeah, I forgot about the
20  fart machine. You were just joking,
21  weren't you?
22      A.    Yeah.
23      Q.    With the fart machine?
24      A.    Yeah.

Page 43

1       Q.    It was funny, wasn't it?
2       A.    Yeah, I thought it was
3   hilarious.
4       Q.    Did you get in any trouble
5   for it, though?
6       A.    No.
7       Q.    So you were allowed to joke
8   around and it wasn't a problem?
9       A.    I didn't get in trouble for
10  it.
11      Q.    And you can't find that BAC,
12  it just slipped through your grip somehow
13  that we were talking about the Harold
14  Mack incident?
15      A.    The BAC?
16          MR. NIEDZIELSKI: He's
17      talking about the memo you might
18      have got from that.
19          THE WITNESS: No, I don't
20      have it.
21  BY MR. SMINKEY:
22      Q.    Did you sign for it?
23      A.    I can't recall. I didn't
24  keep any documents from the BOTC

Page 44

1   training.
2       Q.    So you were not afraid of
3   anything following you to your -- you
4   know, to your work post after you left
5   training?
6       A.    Nope, not at all.
7       Q.    When we got to the training
8   Academy, did they tell us if we were an
9   at will employee or covered by a union
10  contract? What did they tell us
11  regarding that?
12      A.    Can't remember.
13      Q.    Did you just assume that the
14  code of conduct that was kind of like the
15  Bible of how we were supposed to act or
16  whatever?
17      A.    I don't understand the
18  question.
19      Q.    I'm sorry. Maybe I
20  misunderstood. Did you just assume when
21  you were issued this, this was kind of
22  the Bible of how we are supposed to act
23  while we are at the Academy?
24      A.    Yeah, and after work, too.

Page 45

1   When you are on.
2       Q.    Right. So even to this day,
3   is this basically what governs your
4   conduct at work, the code of conduct?
5       A.    That and directives, yes.
6          MR. SMINKEY: No further
7      questions. Thank you for coming.
8          MR. NIEDZIELSKI: He will
9      read and sign.
10          (Witness excused.)
11          (Deposition concluded at
12      approximately 2:26 p.m.)

(Pages 42 to 45)

# Certificate of Service

ON June 30, 2008, I JACK Sminkey hand Delivered a Motion For Protective order to the person addressed below.

Mr. Marc Niedzielski, ESQ
820 N. French St, 6th FL
Wilmington, DE 19801

Jack Sminkey, Plaintiff
3402 Edgmont Ave #33
Brookhaven PA 19015
610-620-3670